**BURCH & CRACCHIOLO, P.A.**
1850 NORTH CENTRAL AVENUE, SUITE 1700
PHOENIX, AZ 85004
TELEPHONE 602.274.7611

James M. Stipe, SBA #014666
jstipe@bcattorneys.com
John D. Curtis II, SBA #019726
jcurtis@bcattorneys.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DT Care, LLC, a limited liability company; and Colossal Management, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>DeAjah Lanae Brodie,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>(Defamation, Tortious Interference, False Light, Injurious Falsehood)<br><br>(Jury Trial Demanded) |

For their complaint against defendant DeAjah Lanae Brodie ("defendant"), plaintiffs DT Care, LLC and Colossal Management, LLC (collectively "plaintiffs"), through counsel undersigned, allege as follows:

**PARTIES**

1. Defendant is, upon information and belief, a resident of Evansville, Indiana.

2. Plaintiff DTCare ("DTCare") was formed in the State of Wyoming in 2019 as a charitable 26 U.S.C. § 501(c)(3) corporation and is still in good standing there. DTCare's primary business offices are in Pittsburgh, Pennsylvania.

3. Plaintiff Colossal Management, LLC ("Colossal") is a Delaware limited liability company working out of its business offices in Phoenix, Arizona.

**JURISDICTION & VENUE**

4. DTCare is a nonprofit tax-exempt organization as described in 26 U.S.C. § 501(c)(3) of the Internal Revenue Code with a Gold Transparency Rating on GuideStar.

1  DTCare operates throughout the United States and has international satellite offices
2  spanning over four continents.

3       5.      DTCare conducts certain voting competitions as one means to raise
4  charitable donations. It contracts with Colossal, a for-profit professional/commercial
5  fundraiser, to run and solely administer its competitions.

6       6.      All of DTCare's competitions are operated and administered by Colossal
7  out of Colossal's offices in Phoenix, Arizona. All competition related work and
8  communications are with Colossal in Arizona. All competitors and voters interact and
9  correspond with or contact Colossal in Arizona.

10      7.      On September 15, 2025, public voting began in the DTCare "Baby of the
11 Year" competition, which was, and is currently being, operated and administered by
12 Colossal from its offices in Phoenix, Arizona.

13      8.      Defendant DeAjah Lanae Brodie registered with Colossal as a competitor
14 in the competition on July 10, 2025, and agreed to the competition Rules, Terms of Use,
15 and Privacy Policy. On September 15, 2025, defendant submitted a free daily vote on
16 behalf of her child. Then, on September 16, 2025, defendant contacted the Baby of the
17 Year support email address requesting to be removed from the competition. Her request
18 was immediately honored. Defendant thus took part in a DTCare competition run by
19 Colossal in Arizona and caused the events complained of herein to occur in Arizona and
20 elsewhere.

21      9.      Plaintiffs bring their complaint under federal diversity jurisdiction, 28
22 U.S.C. § 1332(a), as the parties are completely diverse in citizenship and the amount in
23 controversy exceeds $75,000.

24      10.     Events complained of herein occurred in, or arose from, transactions and
25 conduct occurring in whole or in part in Maricopa County, Arizona.

26      11.     Personal jurisdiction is proper over defendant.

27      12.     Venue is proper pursuant to 28 U.S.C. § 1391(b).

28 …

**FACTS**

13. The "Baby of the Year" competition (the "competition") is an ongoing opportunity for registrants to compete to receive the most votes. The winning "Baby of the Year" will appear in an ad campaign in Variety magazine and receive a $25,000 honorarium.

14. The competition is operated by Colossal as part of a fundraising campaign for DTCare. Voters are able to vote for competitors for free once daily, as well as to vote via "donation votes" where voters receive one vote per dollar donated. Donations raised from "donation votes" cast during the competition go directly to DTCare, which will later grant the donations, minus fees and costs, to the designated grantee for the competition.

15. The designated grantee for the competition is Baby2Baby, a California nonprofit corporation as described in 26 U.S.C. § 501(c)(3) of the Internal Revenue Code with a mission to provide children living in poverty across the country with diapers, clothing and all the basic necessities that every child deserves.

16. Through competitions conducted with Colossal, DTCare has donated over $65 million dollars to charities across the United States.

17. Colossal receives from DTCare, as its fee, a percentage of monies raised from the competition.

18. On or about July 10, 2025, defendant registered as a competitor in the competition.

19. On September 15, 2025, defendant submitted a free daily vote on behalf of her child. Then, on September 16, 2025, defendant contacted the Baby of the Year support email address requesting to be removed from the competition. Her request was immediately honored and her profile deactivated.

20. Thereafter, on the evening of September 17, 2024, plaintiffs were alerted to to videos and/or social media statements in which plaintiff discussed the competition and posted her comments publicly, including on Tik Tok and Facebook. Among her statements about the competition, defendant says that the competition is "a big giant sex

3

trafficking like situation going on involving some bad people." She also says that a baby displayed on the competition homepage is AI generated and that the competition is "using their (the children's) images to do other things with it."

21. Defendant's post led to other social media users reposting and broadly disseminating her statements publicly and discouraging participation in the plaintiffs' Competition.

22. Defendant's statements about the Competition are, and were, utterly and knowingly false and harmful. At no point did defendant take even the most simple step of contacting either of the plaintiffs to determine if any of her supposed concerns or the basis for her statements were true. Defendant thus deliberately chose not to confirm the truth of the statements she was making and causing to be made.

23. Before defendant's false posts, plaintiffs were experiencing a typical percentage of registration removal requests. Immediately following defendant's actions, the number of removal requests spiked upwards. Now plaintiffs have seen tens of thousands more competitors withdraw from the competition than would be usual or expected.

24. The result has cost DTCare and Colossal hundreds of thousands of dollars in lost registrations, and millions of dollars in lost donations and fees.

25. On September 17, 2025, upon learning of defendant's statements, Colossal sent defendant a written letter telling her that the competition has absolutely zero involvement with, nor any connection to, child trafficking or other criminal activity, and that any claims to the contrary are patently false. Colossal also demanded that defendant cease making comments and statements about the competition, remove them from all her social media accounts and other forums, and provide Colossal contact information for the persons that were the supposed source of her information.

26. Despite demand, notice, and opportunity, defendant has refused to remove all her videos or withdraw her fabricated statements as of the filing of this complaint, nor has she provided any contact information for the supposed sources of her information that

1  would allow plaintiffs to mitigate their damages.

2      27.    In response to the demand letter, defendant claimed to have taken down the
3  videos she created, which was not true. Defendant admitted that her false statements had
4  "received significant attention" and may have been repeated by others.

5      28.    The plaintiffs have not only suffered financial harm, but reputational harm
6  as well, including harm to their publishers, sponsors, and host Jessica Alba.

7      29.    Defendant's statements are entirely and knowingly fabricated, untrue, and
8  damaging to plaintiffs financially and reputationally, to the competition, to future
9  competitions, to plaintiffs' ability to conduct future business, to all the charitable causes
10 plaintiffs' support, and to all the publishers, sponsors, and hosts, such as Jessica Alba,
11 that plaintiffs' work with and support through their competitions.

### FIRST CAUSE OF ACTION
(Defamation/Libel *Per Se*)

14     30.    All prior allegations of this complaint are incorporated here.

15     31.    Defendant published intentionally and with malice, or at least extreme
16 negligence, false and defamatory statements about the plaintiffs, their competition, and
17 their business.

18     32.    These statements were made in video and disseminated widely by the
19 defendant and with her permission.

20     33.    Defendant's false and defamatory statements concerned plaintiffs in their
21 business capacity and were made negligently, with knowing recklessness, and with
22 malice.

23     34.    Plaintiffs have been brought into disrepute, contempt, and ridicule, and had
24 their honesty, integrity, virtue, and reputation impeached, by defendant's actions in
25 publishing the false written statements, which have caused them great financial and
26 reputational harm, now and with respect to future competitions as well.

27     35.    The statements by defendant indicate that plaintiffs, through the
28 competition, are bad people involved in felony crimes including fraud, running a sex ring,

1 pedophilia, misusing photographs of children, and sex trafficking. These statements were directed to potential and current participants in the competition who understood them to be information of these alleged crimes by plaintiffs and the competition.

36. Third parties have commented on reposted defendant's statement referencing supposed crimes by plaintiffs and the competition.

37. Defendant's actions constitute defamation/libel *per se*, and defendant's malice and plaintiffs' injuries are presumed.

38. Defendant's communications evidence a conscious disregard for the likelihood that harm would result from making false statements about the plaintiffs, entitling plaintiffs to an award of punitive damages.

39. Defendant should be enjoined from making any further false statements that concern or refer to the plaintiffs or their competitions.

40. Defendant should be enjoined to remove her defamatory and false statements that concern or refer to the plaintiffs or their competitions from the internet, and to deny any request to republish any of her false and defamatory statements.

## SECOND CAUSE OF ACTION

(Tortious Interference with a Contractual Relationship or Business Expectancy)

41. All prior allegations of this complaint are incorporated here.

42. Plaintiffs had a valid contractual relationship with its participants in the competition, both voters and competitors, and a business expectancy with respect to those participants, as well as with participants in future competitions. Plaintiffs further had a business expectancy with respect to the publishers, sponsors, and hosts that plaintiffs work with and support through their competitions, now and in the future.

43. Defendant knew about plaintiffs' relationships and business expectancies now and in the future, and intentionally interfered with them.

44. Defendant deliberately targeted current and potential competition participants with her false statements about the plaintiffs and the competition, which has caused the termination and/or limiting of plaintiffs' relationships and business

1 expectancies with participants, publishers, sponsors, and hosts now and in the future, and
2 which has directly and proximately caused great financial and reputational harm to
3 plaintiffs.

## THIRD CAUSE OF ACTION

(False Light Invasion of Privacy)

45. All prior allegations of this complaint are incorporated here.

46. The defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiffs in a false light.

47. The false light in which the plaintiffs were placed would be highly offensive to a reasonable person in the plaintiffs' position.

## FOURTH CAUSE OF ACTION

(Injurious Falsehood)

48. All prior allegations of this complaint are incorporated here.

49. The defendant has published and continues to maintain false statements derogatory to the plaintiffs' business.

50. This was done by the defendant in a manner calculated to prevent or discourage others from dealing with the plaintiffs or taking part in the competition.

WHEREFORE, plaintiffs ask this Court for the following relief:

A. An award in favor of plaintiffs and against the defendant on defamation.

B. Actual and general compensatory damages.

C. Punitive damages.

D. Taxable costs.

E. A permanent injunction preventing the defendant from uttering or writing any false or defamatory statements about the plaintiffs or their competitions, requiring the defendant to remove any and all of her false or defamatory statements in any way relating to plaintiffs or their competitions from the internet or any other forum, and directing that defendant demand that no third person repost, publish, or otherwise repeat her false and/or defamatory statements about plaintiffs and/or their competitions.

F.   Trial by Jury.

Dated this 19th day of September 2025.

**BURCH & CRACCHIOLO, P.A.**

By  *s/ James M. Stipe*
James M. Stipe
John D. Curtis
1850 North Central Avenue, Suite 1700
Phoenix, AZ 85004
***Attorneys for Plaintiffs***